IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

WARREN T. WADE,

    **Plaintiff,**

v.                                                                   **Civil Action No. 3:14cv34**
                                                                              **(Chief Judge Groh)**

J. WINSLOW, Correctional Officer,
M. COREY, Correctional Officer,

    **Defendants.**

## REPORT AND RECOMMENDATION

### I. BACKGROUND

On March 20, 2014, Plaintiff initiated this case by filing a *pro se* civil rights complaint against the above-named Defendants. (ECF No. 1). On October 2, 2014, Plaintiff was granted leave to proceed *in forma pauperis*, and, on October 29, 2014, he paid the required initial partial filing fee.( ECF Nos. 11 & 13). On October 30, 2014, the undersigned conducted a preliminary review of this matter and determined that summary dismissal was not appropriate. (ECF No. 14). Therefore, an Order to Answer was entered and twenty-one day summonses were issued for service by the U.S. Marshal. (ECF Nos. 14, 15, & 16). On November 25, 2014, the summonses were returned indicating that each Defendant had been served on November 18, 2014. (ECF Nos. 18 & 19). On December 9, 2014, defendants filed a Motion to Dismiss. (ECF No. 20). A Roseboro Notice was entered on December 10, 2014. (ECF No. 22). On December 22, 2014, Plaintiff filed a Response[1] to the defendants' motion. (ECF No. 25).

---

[1] Titled "Opposition to Defendants [sic] Motion to Dismiss."( ECF No. 25).

## II. THE PLEADINGS

**A. The Complaint**

Plaintiff alleges that, on August 11, 2012, he and Alex James, another prisoner, entered into an argument "over food trays that were improperly distributed . . . ." (ECF No. 1 at 8). Plaintiff stated that the argument began because he was holding a larger food tray than the other trays left on the table. Plaintiff stated that the trays were "placed on the tables for everyone to fend for themselves, instead of being passed out one at a time the way they're supposed to do." Id. As a result of this argument, Plaintiff alleges that James and another prisoner later entered his cell and threatened to hurt him. Id. Plaintiff states that he advised Defendant Winslow, a correctional officer, about the situation. Id. Plaintiff maintains that Winslow "refused to do anything about" the situation other than to tell plaintiff to "kick their asses . . . ." Id.

The next morning, Plaintiff states that he was still asleep when cell doors were unlocked. *Id.* Soon after, Plaintiff alleges that James entered his cell "with a broom handle he had unscrewed from a pushbroom left on the pod to clean with" and struck Plaintiff in the left eye and upper arm. Id. Plaintiff claims he was transported to Ohio Valley Medical Center and later Ruby Memorial Hospital where he received stitches on his left lower eye lid and was prescribed eye drops. Id.

Because of James's assault, Plaintiff contends that his left eye is "permanently dilated" and his vision has been greatly reduced. Id. at 9. Plaintiff claims he has visited The Eye Institute twelve times and his glasses prescription has changed three times since the attack. Plaintiff alleges that he was told at the Eye Institute that he will eventually lose sight in his left eye. Id.

Plaintiff alleges his injuries were caused by Defendant Corey's failure to set food trays "one at a time as they should have been" and Defendant Winslow's failure "to inform [his] shift

2

supervisor of [a] problem" and refusal to move him "from the situation upon [his] verbal request . . . ." Id. at 13-14. For relief, Plaintiff seeks the "termination" of Officer Winslow and $1,500,000.00 in damages. Id. at 15.

**B. Defendants' Motion to Dismiss**

In response to the complaint, Defendant Corey and Defendant Winslow assert they are entitled to qualified immunity. Defendants argue that they are entitled to qualified immunity because, at all times relevant to this action, they were "acting in the course of [their] employment as a corrections officer" and the actions alleged by Plaintiff are "discretionary in nature." (ECF No. 20, p. 1). Additionally, at the end of their motion, Defendants "reserve their ability to assert any and all defenses relating to 'failure to exhaust administrative remedies.'" (Id. at p.2).

**C. Plaintiff's Response**

In his response, Plaintiff again argues that if Defendant Corey "passed out the food trays one at a time . . . the argument between he and Mr. James would not have happened. (ECF No. 25, p.1). Further, Plaintiff states that if Defendant Winslow had "done his job . . . by defusing the problem he knew existed, the assault would never have happened." Id. Plaintiff states that he requested three times to be moved to another housing unit, however, Defendant Winslow failed to "notify the shift supervisor . . . in hopes [sic] of seeing a fight." Id.

### III. STANDARD OF REVIEW

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion

3

to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," (Id). (citations omitted), to one that is "plausible on its face," (Id). at 570, rather than merely "conceivable." (Id). Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).

4

Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

## IV. ANALYSIS

### A. Exhaustion of Administrative Remedies

At the end of Defendants' memorandum in support of their motion to dismiss, they claim to "reserve the right to assert the defense of 'failure to exhaust administrative remedies.'" ECF No. 21 at 6. Under the Prison Litigation Reform Act of 1995 ("PLRA"), prisoners must exhaust the grievance procedure in the institution where they are incarcerated prior to filing suit in federal court challenging prison conditions. In Jones v. Brock, the United States Supreme Court held that "failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specifically plead or demonstrate exhaustion in their complaints," nor do they have the burden of proving it. 549 U.S. 199, 216 (2007); see also Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008). Therefore, although Defendants have "reserved" the affirmative defense under the PLRA they have not, in two lines, actually asserted the affirmative defense. Therefore, in this report and recommendation the undersigned will not consider any alleged failure to exhaust administrative remedies.[2]

### B. Qualified Immunity

"Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." Henry v. Pernell,

---

[2]The undersigned notes that this is the second complaint filed by Plaintiff regarding this incident. The first, Civil Action No. 2:12-cv-86-JPB-JES was initiated on December 12, 2012. On January 10, 2014, the Honorable John Preston Bailey dismissed the action without prejudice for failure to exhaust administrative remedies.

5

652 F.3d 524, 531 (4th Cir. 2011)(*en banc*)(citing Saucier v. Katz, 533 U.S. 194, 206 (2001) *overruled in part by* Pearson v. Callahan, 555 U.S. 223 92009). "Qualified immunity may be raised in a motion to dismiss." Jenkins v. Medford, 119 F.3d 1156, 1159 (4th Cir. 1997). Under this doctrine, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "As the qualified immunity defense has evolved, it provides ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

The Supreme Court mandated a two-step sequence for resolving qualified immunity claims in Saucier v. Katz, 533 U.S. 194 (2001). Under Saucier, a court first must decide "whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right." Pearson v. Callahan, 555 U.S. 223, 236, 129 (2009) (citing Saucier, 533 U.S. at 201) (internal citations omitted). If the plaintiff satisfies the first step, "the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id*. (quoting Saucier, 533 U.S. at 201).

The Eighth Amendment imposes a duty on prison officials "to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994). "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" Id at 834 (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). "For a claim based on failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm," and that the prison officials acted with

"'deliberate indifference' to inmate health or safety.'" Id. The Supreme Court left open the point at which a risk of inmate assault becomes sufficient for Eighth Amendment purposes. Id. n3. However, the Supreme Court held that "[a] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Id. at 837. Furthermore, the Eighth Amendment is not violated by the negligent failure to protect inmates from violence, the plaintiff must show that the defendants knew of the risk and consciously disregarded it. Whitley v. Albers, 475 U.S. 312. 319 (1986); Moore v. Winebrenner, 927 F.2d 1312 (4th Cir. 1991).

Defendants do not dispute that Plaintiff was assaulted by another inmate on August 12, 2012. Therefore, the question arises as to whether Defendants knew of a substantial risk to Plaintiff's safety and ignored the same.

**1. Defendant Corey**

With respect to Defendant Corey, Plaintiff alleges simply that he used improper procedures in passing out the food trays. More specifically, he alleges that Defendant Corey had inmate trustees set the food trays on the table for everyone to fend for themselves instead of having them pass them out one at a time. In the opinion of the undersigned, Plaintiff sets forth no discernable basis by which Defendant Corey could have anticipated that a dispute over evening food trays would have initiated an assault in the early hours of the next morning. Therefore, even under the most liberal reading, and regardless of whether the way in which food trays are distributed is discretionary in nature, Plaintiff's complaint fails to establish that Defendant Cory knew of a substantial risk to Plaintiff's

safety and ignored the same. Therefore, the complaint, as it relates to Defendant Corey should be dismissed for failure to state a claim upon which relief can be granted.

**2. Defendant Winslow**

With respect to Defendant Winslow, Plaintiff alleges that "had Officer Winslow" done his job the evening of August 11, 2012, by defusing the problem he knew existed, the assault would never have happened." (ECF. No. 25, p.1). Defendants allege that, as government officials, they are immune from liability in connection with the performance of discretionary functions. Defendant Winslow contends that decisions made concerning Plaintiff's housing assignment after receiving notification of an argument between James and Plaintiff was "discretionary in nature."

In the complaint, Plaintiff alleges that after he engaged in an argument with James about the size of food trays, James and another inmate kicked his cell door and told him "to leave the pod or get [his] ass kicked." (ECF No. 1, p.8). Plaintiff maintains that he then spoke with Defendant Winslow about the situation, and Defendant Winslow told Plaintiff "to kick their asses . . . ." *Id.* In addition, Plaintiff alleges that when he responded that he was not going to fight half the pod, because the two individuals were black, Defendant Winslow replied that he would have help from the other white guys. (ECF 1-1, p.1). In his response to Defendants' Motion to Dismiss, Plaintiff notes that he requested to be moved from the housing unit three times the evening of August 11, 2012. (ECF No. 25, p. 1). Accordingly, Plaintiff claims that Defendant Winslow failed "to address the problem between . . . James and [Plaintiff]" and failed to move Plaintiff "from the situation . . . ." (ECF No. 1, p.14). Moreover, Plaintiff maintains that Officer Winslow "knew in a situation like that he should have in the very least, notify [sic] the shift supervisor, he refused to do in hopes of seeing a fight." Id. Because of Defendant Winslow's alleged inaction, Plaintiff contends that he was attacked by

8

James early the next morning and suffered serious injury to his left eye.

Considering the facts stated in Plaintiff's complaint and viewed in a light most favorable to Plaintiff, the undersigned finds that Plaintiff has alleged sufficient facts to support a claim that his constitutional rights were violated by Defendant Winslow. There is no dispute that Plaintiff was violently assaulted by another inmate. Plaintiff has asserted a claim that Defendant Winslow had an obligation to notify the shift supervisor of the threats made by inmate James. While he cites no policy of the Division of Corrections setting forth this obligation, Plaintiff is not in the position, without discovery, to know for certain the policies and procedures which may be mandated when threats of harm are made by one inmate against another. Furthermore, even if a correctional officer has no obligation to report the threat, the Complaint states sufficient facts to survive the Motion to Dismiss as it related to Defendant Winslow.

As previously noted, the Eighth Amendment is not violated by the negligent failure to protect inmates from violence, the plaintiff must show that the defendant knew of the risk and consciously disregarded it. In this instant matter, Plaintiff alleges that on three occasions he approached Defendant Winslow and requested that he be moved and advised him of the reason for the request. Accordingly, the Complaint raises the inference that Defendant Winslow knew of a risk and consciously disregarded it. Therefore, taken as true and viewed in a light most favorable to Plaintiff, the Complaint raises a plausible claim under the Eighth Amendment, and Defendants' bald assertion that Plaintiff's housing assignment was discretionary in nature, is insufficient to support dismissal of Plaintiff's Complaint against Defendant Winslow at this early stage of the proceedings.[3]

---

[3] The undersigned notes that the cases cited by Defendants in support of their claim that Officer Winslow, as a governmental official, is immune from liability described in Plaintiff's Complaint, were decided on Motions for Summary Judgment.

## V. RECOMMENDATION

For the foregoing reasons, the undersigned recommends that Defendants' Motion to Dismiss, ECF No. 20, be **GRANTED in part and DENIED IN PART**. With respect to Plaintiff's claim against Defendant Corey, that claim should be **DISMISSED WITH PREJUDICE**. However, Plaintiff's claim against Defendant Winslow should proceed. In light of this finding, the undersigned recommends that the Court issue a scheduling order setting forth the time periods for all pretrial matters.

Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objections are made and the basis for such objections. A copy of any objections should also be submitted to the Honorable Gina M. Groh, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to mail a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket. The Clerk is further directed to provide a copy to all counsel of record via electronic means.

DATED: June 18, 2015

/s Robert W. Trumble
ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE